IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAMON HENRY | ) | CASE NO. 1:19-cv-01546 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | **PLAINTIFF'S FIRST** |
| | ) | **AMENDED COMPLAINT FOR** |
| UNIVERSITY HOSPITALS CLEVELAND | ) | **DAMAGES AND** |
| MEDICAL CENTER | ) | **REINSTATEMENT** |
| 11100 Euclid Avenue | ) | |
| Cleveland, Ohio 44106 | ) | **JURY DEMAND ENDORSED** |
| | ) | **HEREIN** |
| -and- | ) | |
| | ) | |
| KAREN HESS | ) | |
| c/o University Hospitals Cleveland Medical | ) | |
| Center | ) | |
| 11100 Euclid Avenue | ) | |
| Cleveland, Ohio 44106 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Damon Henry, by and through undersigned counsel, files his First Amended Complaint against the Defendants pursuant to the Court's November 20, 2019 Order. Plaintiff states and avers the following:

## PARTIES

1. Henry is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

2. University Hospitals Cleveland Medical Center ("UH") is a non-profit corporation with its principal place of business located at 11100 Euclid Ave, Cleveland, Ohio 44106.

3. Karen Hess is a resident of the state of Ohio.

4. Hess was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at UH who acted directly or indirectly in the interest of UH.

5. Hess was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

6. Hess made and/or participated in the adverse actions asserted herein.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Henry is alleging a Federal Law Claim under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, the Civil Rights Act of 1964, 42 U.S.C. 126 § 2000e-2 *et seq*. and the Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq*.

8. All material events alleged in this Complaint occurred in Cuyahoga County.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. This Court has supplemental jurisdiction over Henry's state law claims pursuant to 28 U.S.C. § 1367 as Henry's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Within 300 days of the conduct alleged below, Henry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against UH in Charge No. 532-2019-01162 ("Henry EEOC Charge of Discrimination").

12. On or about November 13, 2019, the EEOC issued Henry a Right to Sue letter for the Henry EEOC Charge of Discrimination.

13. Henry received his Right to Sue letter from the EEOC for the Henry EEOC Charge of Discrimination in accordance with 42 U.S.C. § 2000e-5(f)(1) – which has been attached hereto as Exhibit A.

14. Henry has filed this Amended Complaint within 90 days of the issuance of the Notice of Right to Sue letter for the Henry EEOC Charge of Discrimination.

15. Henry has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b) for the Henry EEOC Charge of Discrimination.

## **FACTS**

16. Henry is a former employee of UH.

17. Henry was born male.

18. Henry identifies as homosexual.

19. Henry identifies as transgender.

20. Henry occasionally wears clothing traditionally associated with women's clothing.

21. Henry began working at UH on or about November 27, 2017.

22. Hess did not participate in the decision to hire Henry.

23. While Henry was employed at UH, he was called a "fag" by his coworkers.

24. During all material events herein, Niesha McGee is and/or was an employee at UH.

25. McGee called Henry a "fag" on multiple occasions.

26. McGee called Henry a "fag" because Henry does not conform to her perception of the male gender stereotypes and/or how a male should act.

27. Henry reported to Karen Hess that McGee called him a "fag."

28. Henry reported to UH's Human Resource department that McGee called him a "fag."

29. Upon information and belief, UH did not discipline McGee following Henry's complaint that she called him a "fag."

30. In failing to discipline McGee following Henry's complaint that she called him a "fag," UH ratified the gender harassment of Henry.

31. Following Henry's complaint that McGee called him a "fag," McGee continued to act with hostility toward Henry.

32. During Henry's employment, co-workers continually questioned Henry on whether he identified as homosexual.

3

33. When co-workers asked Henry if he identified as homosexual, Henry did not engage or initiate these conversations.

34. When co-workers asked Henry if he identified as homosexual, they did so because Henry failed to conform to their perception of the male stereotype and of how a male should act.

35. During Henry's employment, co-workers continually questioned Henry on whether he identified as a member of the LGBTQ+ community.

36. When co-workers asked Henry if he identified as a member of the LGBTQ+ community, Henry did not engage or initiate these conversations.

37. When co-workers asked Henry if he identified as a member of the LGBTQ+ community, they did so because Henry failed to conform to their perception of the male stereotype and of how a male should act.

38. Henry reported to UH that his co-workers inquired as to his sexual orientation as well as whether he was a member of the LGBTQ+ community.

39. Upon information and belief, UH did not discipline any employees following Henry's complaints that co-workers were asking him about his sexual orientation and his status in the LGBTQ+ community.

40. As UH failed to take any corrective action as to Henry's co-workers questioning his sexual orientation and/or status in the LGBTQ+ community, UH ratified the harassment of Henry on the basis of his gender.

41. As a result of suffering from continued harassment on the basis of his gender, Henry filed two separate charges of discrimination with the EEOC while he was employed.

42. As a result of suffering from continued harassment on the basis of his gender, Henry made written complaints via electronic mail to Thomas Zenty.

43. During all material events herein, Zenty is and/or was the Chief Executive Officer of UH.

44. Upon information and belief, Zenty did not conduct and investigation into Henry's complaints of gender discrimination.

45. Upon information and belief, Zenty did not discipline or direct UH to discipline any employees as a result of Henry's gender discrimination complaints.

46. As Zenty failed to take any corrective action to stop the gender discrimination and/or harassment of Henry, Zenty ratified the gender harassment Henry faced.

47. As a result of suffering from continued harassment on the basis of his gender, Henry made written complaints via electronic mail to Thomas Snowberger.

48. During all material events herein, Snowberger is and/or was the Chief Human Resource Officer for UH.

49. Upon information and belief, Snowberger did not conduct an investigation into Henry's complaints of gender discrimination.

50. Upon information and belief, Snowberger did not discipline or direct UH to discipline any employees as a result of Henry's gender discrimination complaints.

51. As Snowberger failed to take any corrective action to stop the gender discrimination and/or harassment of Henry, Snowberger ratified the gender harassment Henry faced.

52. As a result of suffering from continued harassment on the basis of his gender, Henry made written complaints via electronic mail to Chester.

53. Upon information and belief, Chester did not conduct an investigation into Henry's complaints of gender discrimination.

54. Upon information and belief, Chester did not discipline or direct UH to discipline any employees as a result of Henry's gender discrimination complaints.

55. As Chester failed to take any corrective action to stop the gender discrimination and/or harassment of Henry, Chester ratified the gender harassment Henry faced.

56. In or about October 2018, UH transferred Henry to a different work location.

57. When UH transferred Henry to a different work location, Henry had to fill out paperwork for a new uniform.

58. In October 2018 when Henry filled out paperwork for a new uniform, Henry requested to be issued a female uniform.

59. In October 2018, UH issued Henry a male uniform when Henry specifically requested a male uniform.

60. As Henry requested a female uniform in October 2018, UH was aware that Henry identified as transgender, at least as of October 2018.

61. On top of his uniform, Henry would often wear layered clothing that is associated with women's clothing.

62. As UH management employees could see that Henry wore layered clothing that is associated with women's clothing, UH was aware that Henry identified as transgender.

63. Henry applied for intermittent FMLA leave on or about December 31, 2018.

64. As of December 31, 2018, Henry qualified to utilize FMLA leave.

65. Henry requested FMLA leave due to depression and anxiety.

66. UH approved Henry's intermittent FMLA leave.

67. UH approved Henry's intermittent FMLA leave beginning December 31, 2018 and ending June 30, 2019.

68. Henry utilized intermittent FMLA leave between February 4, 2019 and February 11, 2019.

69. Henry suffers from anxiety and depression.

70. Henry's anxiety and depression substantially impair one or more of his major life activities, including working.

71. As a result of suffering from anxiety and depression, Henry is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

72. As a result of suffering from depression Henry is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

73. As a result of suffering from anxiety Henry is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq*.

74. As a result of suffering from depression Henry is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq*.

75. In the alternative, Defendants perceived Henry as being disabled.

76. In the alternative, Defendants perceived Henry's disability to substantially impair one or more of his major life activities, including working.

77. Despite this actual or perceived disabling condition, Henry was still able to perform the essential functions of his job.

78. As Henry applied for FMLA leave for anxiety and depression, Defendants were aware that he suffered from anxiety and depression.

79. The harassment of Henry on the basis of his gender exacerbated his anxiety and depression.

80. Defendants were aware that the harassment of Henry on the basis of his gender exacerbated his anxiety and depression.

81. Defendants failed to take corrective actions to stop the harassment of Henry even though they were aware that the harassment of Henry on the basis of his gender exacerbated his anxiety and depression.

82. On February 20, 2019, Henry was in an automobile accident (hereinafter referred to as the "Car Accident").

83. As a result of the Car Accident, Henry suffered injuries to his mid-back, upper-spine area, and a sprained ankle.

84. The Car Accident injuries Henry suffered substantially impaired one or more of his major life activities such as a limited range of motion and working.

85. As a result of suffering from the Car Accident related injuries, Henry is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

86. Alternatively, as a result of suffering from the Car Accident related injuries, Defendants perceived Henry to be disabled.

87. As a result of suffering from the Car Accident related injuries Henry is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq*.

88. In the alternative, Hess perceived Henry's disability to substantially impair one or more of his major life activities, including working.

89. Despite this actual or perceived disabling condition, as a result of the Car Accident related injuries, Henry was still able to perform the essential functions of his job.

90. Immediately after the Car Accident, Henry called Hess to advise her of the accident.

91. Henry reported to work after the Car Accident.

92. Henry reported to work after the Car Accident as he feared that he would be disciplined and/or terminated if he did not do so.

93. Henry told Hess about the Car Accident.

94. After approximately 30 minutes of Henry being at work, Hess advised Henry to go to the Emergency Department to seek treatment.

95. Hess knew or should have known that Henry would require time off due to the Car Accident.

96. Henry told Hess that he planned to use intermittent FMLA leave to cover his time off due to the Car Accident.

97. Defendants disciplined Henry for "an unscheduled absence and an attendance occurrence" in relation to Henry taking time off work due to the Car Accident.

98. Hess knew Henry intended to use his intermittent FMLA leave to cover his "unscheduled absence and attendance occurrence" on February 20, 2019.

99. On or about March 5, 2019, Henry met with Hess.

100. At the March 5, 2019 meeting between Hess and Henry, Hess advised him that his employment was being terminated.

101. At the meeting, Henry was given termination papers and informed the reasons UH asserted for terminating his employment were "excessive tardiness and absences," "performance," and "violation of the attendance policy."

102. Defendants' alleged performance reason for terminating Henry's complaint was due to an alleged patient complaint (hereinafter referred to as, "Alleged Patient Complaint").

103. The Alleged Patient Complaint would have required Henry to perform patient care, of which he is not certified to perform.

104. Hess discussed the Alleged Patient Complaint with Henry prior to March 5, 2019 meeting but did not discipline him at the time she discussed the complaint with him.

105. Defendants have a practice to write up an individual the first time the supervisor meets with an employee regarding an alleged performance issue.

106. As Defendants did not write up Henry during the first meeting with Hess regarding the Alleged Patient Complaint, Defendants violated their own policies and practices with respect to Henry.

107. Henry had not been progressed through UH's progressive disciplinary policy with respect to performance prior to the Alleged Patient Complaint.

108. Defendants violated their own progressive disciplinary policy when terminating Henry for an alleged performance issue when he had not been progressed through the disciplinary policy for prior performance issues.

109. Upon information and belief, Defendants do not violate their own progressive disciplinary policy regarding employees who conform to Defendants' perception of the stereotype of the individuals' sex assigned at birth.

110. Defendants violated their own progressive disciplinary policy when terminating Henry's employment because he failed to conform to Defendants' perception of the male stereotype and how a male should act.

111. Upon information and belief, Defendants do not violate their own progressive disciplinary policy regarding employees who are not disabled.

112. Defendants terminated Henry in violation of their own progressive disciplinary policy because of his disability.

113. Upon information and belief, Defendants do not violate their own progressive policy when terminating the employment of individuals Defendants do not perceive to be disabled.

114. Defendants terminated Henry in violation of their own progressive disciplinary policy because Defendants perceived Henry to be disabled.

115. Upon information and belief, Defendants do not violate their own progressive disciplinary policy when terminating the employment of individuals who have not made protected complaints.

116. Defendants terminated Henry in violation of their own progressive disciplinary policy in retaliation for making protected complaints.

117. Upon information and belief, Defendants do not violate their own progressive disciplinary policy when terminating the employment of individuals who have not utilized FMLA leave.

118. Defendants terminated Henry in violation of their own progressive disciplinary policy in retaliation for utilizing FMLA leave.

119. Defendants attempted to couple alleged discipline as a way to legitimize their illegal termination of Henry's employment.

120. Defendants terminated Henry to keep him from utilizing FMLA leave.

121. Defendants terminated Henry to keep him from utilizing FMLA leave to protect his absences related to missed time due to the Car Accident.

122. Defendants terminated Henry in retaliation for utilizing FMLA leave.

123. Defendants terminated Henry in retaliation for making multiple protected complaints.

124. Defendants terminated Henry because of his gender.

125. Defendants terminated Henry because Henry did not conform to Defendants' perception of the male stereotype and/or how a male should act.

126. Defendants terminated Henry because of his disability.

127. Alternatively, Defendants terminated Henry because of a perceived disability.

## COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

### (Against All Defendants)

128. Henry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

129. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

130. UH is a covered employer under the FMLA.

131. During his employment, Henry qualified for FMLA leave.

132. During his employment, Henry attempted to request FMLA leave by asking Defendants if he qualified to take FMLA leave.

133. Defendants failed to properly advise Henry of his rights under the FMLA.

134. Defendants unlawfully interfered with Henry's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

135. Defendants' act of terminating Henry's employment for an absence that should have been covered by FMLA leave constitutes FMLA interference.

136. Defendants' act of disciplining Henry for an absence that should have been covered by FMLA leave constitutes FMLA interference.

137. Defendants act of terminating Henry to keep him for utilizing FMLA leave for the Car Accident injuries constitutes FMLA interference.

138. Defendants violated section 825.300(c)(1) of the FMLA and interfered with Henry's FMLA rights when Defendants did not honor Henry's approved use of FMLA leave.

139. As a direct and proximate result of Defendants' conduct, Henry is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## COUNT II: RETALIATION IN VIOLATION OF THE FMLA

### (Against All Defendants)

140. Henry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

141. UH is a covered employer under the FMLA.

142. During his employment, Henry qualified for FMLA leave.

143. During his employment, Henry utilized FMLA leave.

144. After Henry utilized his qualified FMLA leave, Defendants retaliated against him.

145. Defendants retaliated against Henry by terminating his employment.

146. Defendants retaliated against Henry by terminating his employment for an absence that should have been protected by the FMLA.

147. Defendants retaliated against Henry by giving him meritless disciplinary action(s).

148. Defendants willfully retaliated against Henry in violation of U.S.C. § 2615(a).

149. As a direct and proximate result of Defendants' wrongful conduct, Henry is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## COUNT III: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

### (Against All Defendants)

150. Henry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

13

151. Henry is a member of a statutorily protected class based on his gender under R.C. § 4112.01 *et seq*.

152. Defendants treated Henry differently than other similarly-situated employees based on his gender.

153. Defendants treated Henry differently than other similarly-situated employees because Henry failed to conform to Defendants' perception of the male stereotype and/or how a male should act.

154. Defendants discriminated against Henry on the basis of his gender throughout his employment with the company.

155. Defendants discriminated against Henry because Henry failed to conform to Defendants' perception of the male stereotype and/or how a male should act.

156. Henry typically wore clothing traditionally associated with women's clothing.

157. Henry specifically requested from management the ability to wear a female uniform.

158. As Henry wore clothing traditionally associated with women's clothing, Defendants knew or should have known that Henry is transgender.

159. Defendants terminated Henry's employment without just cause.

160. Defendants terminated Henry's employment based on his gender.

161. Defendants terminated Henry's employment because Henry failed to conform to Defendants' perception of the male stereotype and/or how a male should act.

162. Defendants' discrimination against Henry based on his gender violates R.C. § 4112.01 *et seq.*

163. Henry suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

164. As a direct and proximate result of Defendants' conduct, Henry suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: GENDER DISCRIMINATION IN VIOLATION OF
## 42 U.S.C. 126 § 2000e-2 *et seq*.

### (Against Defendant UH)

165. Henry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

166. Henry is a member of a statutorily protected class based on his gender under 42 U.S.C. 126 § 2000e-2 *et seq*.

167. Defendant treated Henry differently than other similarly-situated employees based on his gender.

168. Defendant treated Henry differently than other similarly-situated employees because Henry failed to conform to Defendant's perception of the male stereotype and/or how a male should act.

169. Defendant discriminated against Henry on the basis of his gender throughout his employment with the company.

170. Defendant discriminated against Henry because Henry failed to conform to Defendant's perception of the male stereotype and/or how a male should act.

171. Henry typically wore clothing traditionally associated with women's clothing.

172. Henry specifically requested from management the ability to wear a female uniform.

173. As Henry wore clothing traditionally associated with women's clothing, Defendant knew or should have known that Henry is transgender.

174. Defendant terminated Henry's employment without just cause.

175. Defendant terminated Henry's employment based on his gender.

176. Defendant terminated Henry's employment because Henry failed to conform to Defendant's perception of the male stereotype and/or how a male should act.

177. Defendant's discrimination against Henry based on his gender violates 42 U.S.C. 126 § 2000e-2 *et seq*.

178. Henry suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 2000e-2 *et seq*.

179. As a direct and proximate result of Defendant's conduct, Henry suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

### (Against All Defendants)

180. Henry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

181. As a result of the Defendants' discriminatory conduct described above, Henry complained about the disability discrimination he was experiencing.

182. As a result of the Defendants' discriminatory conduct described above, Henry complained about the gender discrimination he was experiencing.

183. Henry filed two separate charges of discrimination with the EEOC during his employment, asserting claims of gender discrimination and retaliation.

184. Subsequent to Henry's protected complaints, Defendants failed to take any action to stop the harassment of Henry.

185. Subsequent to Henry's protected complaints, Defendants ratified the harassment of Henry in failing to take any action to stop the harassment of Henry.

186. Subsequent to Henry's protected complaints, Defendants subjected Henry to meritless write ups and/or disciplinary actions.

187. Subsequent to Henry's protected complaints, Defendants terminated Henry on the meritless Alleged Patient Complaint.

188. Subsequent to Henry's protected complaints, Defendants terminated Henry's employment for absence(s) that should have been covered by FMLA leave.

189. Defendants' actions were retaliatory in nature based on Henry's opposition to the unlawful discriminatory conduct.

190. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

191. Henry suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

192. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Henry, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI:  RETALIATION IN VIOLATION OF 42 U.S.C. 126 § 2000e-2 *et seq*.

### (Against Defendant UH)

193. Henry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

194. As a result of the Defendant's discriminatory conduct described above, Henry complained about the disability discrimination he was experiencing.

195. As a result of the Defendant's discriminatory conduct described above, Henry complained about the gender discrimination he was experiencing.

196. Henry filed two separate charges of discrimination with the EEOC during his employment, asserting claims of gender discrimination and retaliation.

197. Subsequent to Henry's protected complaints, Defendant failed to take any action to stop the harassment of Henry.

198. Subsequent to Henry's protected complaints, Defendant ratified the harassment of Henry in failing to take any action to stop the harassment of Henry.

199. Subsequent to Henry's protected complaints, Defendant subjected Henry to meritless write ups and/or disciplinary actions.

200. Subsequent to Henry's protected complaints, Defendant terminated Henry on the meritless Alleged Patient Complaint.

201. Subsequent to Henry's protected complaints, Defendant terminated Henry's employment for absence(s) that should have been covered by FMLA leave.

202. Defendant's actions were retaliatory in nature based on Henry's opposition to the unlawful discriminatory conduct.

203. Pursuant to 42 U.S.C. 126 § 2000e-2 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

204. Henry suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 2000e-2 *et seq.*

205. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Henry, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VII: DISABILITY DISCRIMINATION IN VIOLATION
## OF R.C. § 4112.01 *et seq*.

### (Against All Defendants)

206. Henry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

207. Henry suffers from anxiety and depression.

208. Henry suffers from the Car Accident related injuries.

209. Henry is disabled.

210. In the alternative, Defendants perceived Henry as being disabled.

211. Henry's conditions constituted physical impairments.

212. Henry's conditions substantially impaired one or more of his major life activities including working.

213. Defendants treated Henry differently than other similarly-situated employees based on his disabling conditions.

214. Defendants treated Henry differently than other similarly-situated employees based on his perceived disabling condition.

215. On or about March 5, 2019, Defendants terminated Henry's employment without just cause.

216. Defendants terminated Henry's employment based on his disability.

217. Alternatively, Defendants terminated Henry's employment based his perceived disability.

218. Defendants violated R.C. § 4112.01 *et seq*. when it discharged Henry based on his disability.

219. Alternatively, Defendants violated R.C. § 4112.01 *et seq*. when they discharged Henry based on his perceived disability.

220. Defendants violated R.C. § 4112.01 *et seq*. by discriminating against Henry based on his disabling condition.

221. Alternatively, Defendants violated R.C. §4112.01 *et seq*. by discriminating against Henry based on his perceived disabling condition.

222. Henry suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

223. As a direct and proximate result of Defendants' conduct, Henry suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VIII: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq*.

### (Against All Defendant UH)

224. Henry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

225. Henry suffers from anxiety and depression.

226. Henry suffers from the Car Accident related injuries.

227. Henry is disabled.

228. In the alternative, Defendant perceived Henry as being disabled.

229. Henry's conditions constituted physical impairments.

230. Henry's conditions substantially impaired one or more of his major life activities including working.

231. Defendant treated Henry differently than other similarly-situated employees based on his disabling conditions.

232. Defendant treated Henry differently than other similarly-situated employees based on his perceived disabling condition.

233. On or about March 5, 2019, Defendant terminated Henry's employment without just cause.

234. Defendant terminated Henry's employment based on his disability.

235. Alternatively, Defendant terminated Henry's employment based his perceived disability.

236. Defendant violated 42 U.S.C. 126 § 12101 *et seq*. when it discharged Henry based on his disability.

237. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq*. when it discharged Henry based on his perceived disability.

238. Defendant violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Henry based on his disabling condition.

239. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Henry based on his perceived disabling condition.

240. Henry suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

241. As a direct and proximate result of Defendant's conduct, Henry suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Henry demands from Defendants the following:

(a) Issue an order requiring UH to restore Henry to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Henry for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Henry's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Daniel S. Dubow*

Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
        daniel.dubow@spitzlawfirm.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff Damon Henry demands a trial by jury by the maximum number of jurors permitted.

/s/*Daniel S. Dubow*
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2019, a copy of the foregoing was filed via the Court's electronic filing system and made available to all parties in this matter.

/s/*Daniel S. Dubow*
Daniel S. Dubow (0095530)